### STAINES, BUNN & TABER CO. v. DUGGAN.

(Supreme Court, Appellate Term. June 25, 1909.)

SALES (§ 23*)—CANCELLATION OF ORDER—EFFECT.

    If a buyer canceled his unaccepted order for goods to be manufactured before the seller had done anything except furnish estimates, no consideration for a contract arising from the order had passed, and such a contract would be wholly unilateral.

    [Ed. Note.—For other cases, see Sales, Cent. Dig. § 45; Dec. Dig. § 23.*]

Appeal from City Court of New York, Trial Term.

Action by the Staines, Bunn & Taber Company against Edward J. Duggan. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and MacLEAN and SEABURY, JJ.

Florence J. Sullivan, for appellant.
Reed & Pallister, for respondent.

PER CURIAM. In its complaint, the plaintiff, which is a domestic corporation, alleges that in July, 1908, it entered into a contract with defendant to manufacture, sell, and deliver to defendant certain gas and electric fixtures, together with the necessary glassware, and to install the same in certain public schools, as to which schools defendant claimed to have a contract with the city of New York, and that defendant promised to pay plaintiff $5,242 upon the completion of the work by the plaintiff; that on August 12, 1908—

"before the time for plaintiff to perform the conditions on its part to be performed in the manufacture of the said goods, the defendant gave notice in writing to plaintiff that he would not take the said goods and would not complete his agreement, and that defendant thereby abandoned the said agreement, and has ever since wholly failed to perform it, although plaintiff was at all times ready, willing, and able to complete the said agreement on its part and manufacture the said fixtures and deliver the same, to the plaintiff's damage $1,500."

The answer is a general denial, except that it alleges that:

"On or about the month of July, 1908, there were certain negotiations between the plaintiff and defendant relative to certain gas and electric fixtures,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and that before such negotiations assumed the form of a contract they were terminated and concluded."

The court directed the jury to find a verdict for plaintiff for $865.26. Defendant appeals.

It appears that on July 28, 1908, defendant wrote to plaintiff as follows:

"Please furnish and deliver to the building at location specified below, and attach to the proper outlets, the articles specified in the following schedule, at the prices hereinafter shown. Terms strictly cash, upon fulfillment of this order. Title to goods to vest in vendor until fully paid."

Then followed the location of delivery and articles wanted, and then the words: "Put up complete, $1,800." On the same day defendant wrote plaintiff an identical letter, except that another location was named and other articles named, and stated the following price: "Put up complete, $1,241." Still again on the same day he wrote a third identical letter, giving another location and other articles, and stating the price, "put up complete," to be $1,100. Again on the same day a fourth and a fifth letter were written by defendant to plaintiff of the same import, but giving different locations, different articles, and the prices, respectively, $371 and $130. There was no written acceptance of these orders, nor any oral one, so far as specifically appears. Thereafter, and on August 12, 1908, defendant wrote another letter to plaintiff:

"I have several times endeavored to have you give me the value of the old fixtures in Public Schools Nos. 67 and 158, borough of Manhattan; but you have paid no attention to it. After letting it go over a week, you come back with the excuse that another contractor started to remove the fixtures in Public School No. 158. This was certainly done without any authority on the part of the other contractor, of which they are perfectly willing to return and put back where they removed them from. There does not seem to be any intention on your part of complying with this request. My estimator allowed considerable on those fixtures, but your stand seems to be that they are of little value as to making any allowance for them. This morning I had a telephone appointment with your Mr. Bunn, which he failed to keep. I herewith consider any understanding or signed estimates by me on July 28 canceled."

No answer was made to this letter, beyond an expression of surprise at the cancellation. The plaintiff's representative and officer, one Taber, swears that the articles had no market value, "outside of the job that they were made for, and that their cost would be $836." He swears that defendant called him up on the telephone on or about July 25, 1908, and asked him to make an estimate, and he did so, and thereafter he received the letters of July 28, 1908, above quoted. He further says that plaintiff "started to manufacture" the articles, but did not complete them on account of defendant's letter above quoted, but that plaintiff has always been willing to go on and complete them, and deliver them according to the orders of defendant. He admits he knows nothing personally about the manufacture of the articles, or whether any articles were manufactured, and he is the only witness called by plaintiff. The court below held that plaintiff was not obligated in any event to manufacture the articles after plaintiff was told to stop, and that plaintiff was entitled to the difference between the cost price and the contract price of these articles, if plaintiff was entitled to

anything. To this ruling defendant excepted. Plaintiff's said representative and officer, the said Taber, is asked:

"Q. Either by letter or otherwise, did you ever say anything to the defendant in reference to his complaint, contained in the letter of August 12th? Was there anything said with reference to the allowance for the old fixtures? A. No, sir; I never directly or indirectly made any estimate of an allowance on those old fixtures with Mr. Duggan."

Defendant's counsel endeavors to show that nothing was done by way of manufacturing the articles, but was not allowed to do so by the court. The said witness is asked:

"Q. Can you tell the jury any article that was made by your company after this order was given?"

An objection was made on the ground that it was immaterial whether he could or not, and the objection was sustained, and defendant excepted. In another place, however, Taber admits that he knows nothing about the matter, except from hearsay. From the evidence of plaintiff and the scanty testimony that defendant was allowed to put in, and from statements of counsel, it may be gathered that defendant asked for estimates, which plaintiff furnished, and that thereupon defendant wrote the letters of July 28th, above quoted, giving orders for articles, which orders were canceled on August 12th. Although defendant was not allowed to show that plaintiff never did a thing towards even commencing the manufacture of the articles, the complaint rather indicates an implied admission on the part of plaintiff that little or nothing had in fact been done; for, as we have seen, the complaint states that:

"On or about the 12th of August, 1908, and before the time for the plaintiff to perform the conditions on its part to be performed in the manufacture of said goods, defendant gave notice * * * that he would not take the goods," etc.

If defendant's order of July 28, 1908, was canceled by the letter of August 12, 1908, before plaintiff had done anything beyond furnishing estimates, no consideration for the alleged contract had passed, and the said alleged contract was wholly unilateral. It was a mere order, which was canceled before it had begun to be executed. Defendant also sought to show that the letters of July 28th had been altered since he sent them, by the addition of the words "wanted at once"; but the court would not permit it. He also sought to show that there was a separate understanding with regard to the old fixtures, but was not allowed to do so. The defendant sought to show that the arrangement between the parties was different from that claimed by plaintiff, and amended his answer in an endeavor to meet technical objections on the part of plaintiff; but the court ruled out the offered testimony.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.